UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JIMMY TORRES,<br><br>    Plaintiff,<br><br>    v.<br><br>SEGWAY, INC.,<br><br>    Defendant. | Case No.  25-cv-05005-BLF<br><br>**ORDER GRANTING MOTION TO TRANSFER; AND TRANSFERRING CASE TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE**<br><br>[Re:  ECF No. 30] |

Before the Court is Defendant Segway Inc.'s ("Segway") motion to transfer or stay this case pursuant to the first-to-file rule in light of three actions currently pending in the United States District Court for the District of Delaware.  ECF No. 30 ("Mot."); *see also* ECF No. 38 ("Reply").  Plaintiff Jimmy Torres ("Torres") opposes the motion.  ECF No. 35 ("Opp.").  The Court held a hearing on the motion on December 18, 2025.  ECF No. 42.

Torres's opposition includes a challenge to subject matter jurisdiction.  *See* Opp. at 3–5.  And, at the hearing, Torres requested jurisdictional discovery in connection with this challenge.  The Court granted Mr. Torres's request to take a limited-scope deposition of Segway's General Counsel and ordered supplemental briefing on the jurisdictional issue.  ECF No. 43.  The Parties then submitted simultaneous supplemental briefs.  *See* ECF Nos. 46 ("Pl. Supp."), 47 ("Def. Supp.").

For the reasons stated by the Court on the record at the hearing and those that follow, the Court GRANTS Segway's motion to transfer the case and TRANSFERS this case to the United States District Court for the District of Delaware.[1]

_____

[1] Because this case is being transferred, the Parties shall address any requests for sealing to the Delaware court.

United States District Court
Northern District of California

## I.   BACKGROUND

The above-captioned case arises out of the allegedly defective folding mechanism of the Segway Ninebot Max G30P and G30LP KickScooters (collectively, "KickScooters").  Mot. at 1. Segway seeks to transfer this case to the United States District Court for the District of Delaware where three similar lawsuits, *Cicero v. Segway Inc.*, No. 25-cv-00369-GBW, *Sabu v. Segway Inc.*, No. 25-cv-00394-GBW, and *Rzewuski et al v. Segway, Inc.*, No. 25-cv-0463-GBW, have been consolidated.  Mot. at 3.

### A.   The Delaware Actions

#### 1.   The *Cicero* Case

On March 25, 2025, Barton Cicero, a Massachusetts resident, filed a putative class action against Segway in the District of Delaware.  Declaration of Anna Boyle in Support of Defendant Segway, Inc.'s Notice of Motion and Motion to Transfer or Stay Case ("Boyle Decl."), ECF No. 30-1, Ex. 1 ("*Cicero* Compl.").  Cicero sued Segway because of a "nationwide recall instructing its customers to stop using [KickScooters] because the folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers." *Cicero* Compl. ¶ 1.  Cicero alleged that the recall of the KickScooters was an inadequate remedy for the alleged defect.  *Id.* ¶ 39.  Cicero brought three causes of action under Massachusetts law: (1) violations of Mass. Gen. Laws. Ch. 93A, § 2; (2) unjust enrichment; and (3) fraud.  *Id.* ¶¶ 51– 86.  Cicero sought to represent several classes, including a nationwide class of all KickScooter purchasers, a "Multi-State Implied Warranty Class" and a "Multi-State Consumer Protection Class."  *Id.* ¶ 42.  The latter two proposed classes include those who purchased a KickScooter in California.  *Id.*

#### 2.   The *Sabu* Case

On March 31, 2025, plaintiffs Aaron John Sabu, a California resident, and Christopher Holmes, a New York resident, filed a putative class action against Segway in the District of Delaware.  *See* Boyle Decl. Ex. 2 ("*Sabu* Compl.") ¶¶ 1, 7, 9.  These plaintiffs both purchased KickScooters, which they allege are defective because "the folding mechanism can fail . . . while the scooter is in use."  *Id.* ¶ 1.  They further allege the recall was inadequate.  *Id.* ¶¶ 40–43.

Plaintiffs bring seven causes of action: (1) violations of California's Unfair Competition Law ("UCL"); (2) violations of California's Consumer Legal Remedies Act ("CLRA"); (3) violation of California's Song-Beverly Consumer Warranty Act; (4) violations of New York General Business Law ("GBL") § 349; (5) violations of New York GBL § 350; (6) unjust enrichment; and (7) fraud by omission / intentional misrepresentation. *Id.* ¶¶ 53–107.  The class definition proposes multiple classes, including a nationwide class, a "Multi-State Consumer Protection Class" that includes California, and a California subclass of "all people who purchased [KickScooters] in California." *Id.* ¶ 44.

### 3.   The *Rzewuski* Case

On April 15, 2025, plaintiffs Mary Rzewuski, an Illinois resident, and Edward Steven Heymer, a California resident, filed a putative class action against Segway in the District of Delaware.  *See* Boyle Decl. Ex. 3 ("*Rzewuski* Compl.") ¶¶ 11–12.  They allege that "the folding mechanism can fail and cause the handlebars or stem to fold while the scooter is in use, posing a fall hazard to consumers." *Id.* ¶ 20.   The complaint further alleges that the recall was inadequate and led to plaintiffs' "sustain[ing] economic injuries." *Id.* ¶¶ 24–28.  The *Rzewuski* action alleged seven causes of action: (1) breach of the implied warranty of merchantability (including California's Song-Beverly Act); (2) violations of state consumer fraud acts (including Cal. Bus. & Prof. Code § 17200, *et seq.*); (3) violation of Illinois's Consumer Fraud and Deceptive Practices Act; (4) violation of the California UCL; (5) violation of the California CLRA; (6) violation of California's False Advertising Law ("FAL"); and (7) unjust enrichment/quasi-contract. *Id.* ¶¶ 71–153.

The plaintiffs sought to represent a national class of KickScooter purchasers. *Id.* ¶ 59.  In the alternative, they sought to represent several, more specific classes, including a California subclass of "[a]ll persons in California who purchased [KickScooters]," a "Multi-State Implied Warranty" subclass that includes California purchasers, and a "Multi-State Consumer Fraud" subclass that includes California purchasers. *Id.*

### 4.   Consolidation into *In re Segway Scooter Recall Litigation*

On July 18, 2025, the plaintiffs from all three of the Delaware actions collectively moved

United States District Court
Northern District of California

United States District Court
Northern District of California

to consolidate their cases and to appoint interim class counsel. *See* Plaintiffs' Amended Motion for Consolidation and Appointment of Interim Co-Lead Counsel, Boyle Decl. Ex. 4. Plaintiffs contended that consolidation was warranted on the grounds that the cases "raise identical legal and factual issues concerning duty and breach, name the same Defendant, arise from the same recall, and involve similar injuries and economic damages." *Id.* at 7. The Court in the District of Delaware granted plaintiffs' motion on October 6, 2025. *See* Order Granting Motion, Boyle Decl. Ex. 5. The cases were consolidated into *In re Segway Scooter Recall Litigation. Id.* at 2.

On October 27, 2025, the Delaware plaintiffs filed a Consolidated Class Action Complaint incorporating the allegations and causes of action from each case. *See* Consolidated Class Action Complaint, Boyle Decl. Ex. 6 ("Del. CAC"). The Consolidated Complaint seeks relief for multiple classes and subclasses of plaintiffs, including a nationwide class, a California subclass, a "Multi-State Implied Warranty Class" that includes California residents, and a "Multi-State Consumer Protection Class," that includes California residents for the alleged folding mechanism defect. *Id.* ¶¶ 23–25, 53.

### B.    The *Torres* Action

On May 6, 2025, Torres filed a putative class action against Segway in the Superior Court of California for the County of Monterey. Notice of Removal, ECF No. 1 ¶ 1; *see also* ECF No. 1, Ex. A ("Compl."). Segway removed this action to the Northern District of California on June 12, 2025. *See* Notice of Removal.

Torres alleges that he purchased a defective KickScooter because the "folding mechanism that keeps the [KickScooter] upright has a propensity to fail," which can cause "the handlebars or stem to fold while the scooters are in use." Compl. ¶ 6. Plaintiff further alleges that the "remedy" Segway "offers consumers who receive notice of the Recall" is "inadequate." *Id.* ¶¶ 11–13. Plaintiff brings five causes of action: (1) breach of implied warranties; (2) violation of the Song-Beverly Consumer Warranty Act; (3) violation of the California CLRA; (4) violation of the California UCL; and (5) violation of the California FAL. *Id.* ¶¶ 74–143. Torres seeks to represent a class that consists of "all persons who purchased [KickScooters] in the State of California for personal use and not resale." *Id.* ¶ 59.

United States District Court
Northern District of California

## II.    SUBJECT MATTER JURISDICTION

In opposition to Segway's motion to transfer, Torres argues that the Court lacks subject matter jurisdiction over this case because there is not diversity of citizenship of the parties.  Opp. at 3–5; Pl. Supp.  Before it can reach the merits, the Court must first determine whether it has jurisdiction.

### A.    Legal Standard

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  They may only adjudicate those cases that the Constitution and Congress authorize, such as those involving diversity of citizenship or a federal question, or to which the United States is a party.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006); *see also Kelly v. Wengler*, 822 F.3d 1085, 1094 (9th Cir. 2016).  If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court.  28 U.S.C. § 1447(c).

Pursuant to the Class Action Fairness Act ("CAFA"), federal courts have original jurisdiction over state law actions where the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs), the number of members of all proposed plaintiff classes in the aggregate is more than 100, and any member of a class of plaintiffs is a citizen of a State different from any defendant.  28 U.S.C. § 1332(d).  A corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business—the corporation's "nerve center."  *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

The party asserting federal jurisdiction bears the burden of proving diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  Removal jurisdiction premised on diversity is determined as of the time the complaint is filed and removal effected.  *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).  The party seeking removal "has the burden to prove, by a preponderance of the evidence, that removal is proper."  *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010).  "This burden is particularly stringent for removing defendants because '[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand.'"  *Corral v. Select Portfolio Servicing,*

*Inc.*, 878 F.3d 770, 773–74 (9th Cir. 2017) (quoting *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009)).

**B.    Discussion**

As an initial matter, all appear to agree that the proposed class exceeds 100 members, Segway is a citizen of Delaware (the state where it is incorporated), and the amount in controversy is satisfied. *See* Notice of Removal ¶¶ 4, 19, 28. The Parties disagree on the location of Segway's principal place of business, and thus its second state of citizenship. *See* 28 U.S.C. § 1332(c)(1). Torres asserts that both he and Segway are citizens of California, so diversity is lacking. *See* Pl. Supp. He argues that statements on Segway's website and Segway's assertions in prior litigation amount to a "garbled mess" that do not tell a clear story about Segway's nerve center. Pl. Supp. at 4. In response, Segway contends that its principal place of business is in Texas, including because its chief executive and a majority of its high-level employees operate from Texas and its headquarters are likewise located there. *See* Def. Supp.

Under 28 U.S.C. § 1332(c)(1), a corporation's principal place of business "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities,"—the so-called "nerve center." *Hertz Corp.*, 559 U.S. at 80–81. "In practice," the nerve center "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

Contrary to Torres's assertions, Segway provides a straightforward discussion of its nerve center and has submitted considerable evidence in support thereof. In early 2024, Segway began to consider relocating its headquarters from Arcadia, California to Texas. Deposition of Wei Zhao, ECF No. 46-2 ("Zhao Depo.") at 18:17–19:20. Segway acquired an office in Plano, Texas, began hiring employees there, and transferred other employees from California to Texas. Zhao Depo. at 23:21–24:20. By August 2024, a majority of Segway's employees were based in Texas, and Segway's Board passed an official resolution moving Segway's headquarters from California to Texas, effective November 18, 2024. Zhao Depo. at 26:8–27:4; *see also* Board Resolution, ECF No. 38-1, Ex. B. As part of this move, Segway sold its Arcadia, California office. Zhao

United States District Court
Northern District of California

6

Depo. at 49:6–7.

Segway's chief executive and sole officer is its President, Wei ("Wayde") Zhao. Zhao Depo. at 20:17–24. He has lived and worked in Texas since being hired in late 2023. *Id.* at 21:3–22:23, 30:4–9. Wayde Zhao is also a director. Zhao Depo. at 27:7–8. Segway's evidence further demonstrates that many of its other high-level employees are based out of the Texas headquarters. Segway's second director is located in the Plano, Texas office. Zhao Depo. at 29:2–20. So is Segway's Head of Customer Service, Head of IT, Head of Logistics, and the sole Human Resources employee. Zhao Depo. at 30:11–32:5. In sum, Segway has submitted evidence illustrating that its nerve center—its headquarters and the place where business decisions are made—is in Texas. *See Galarpe v. United Airlines, Inc.*, No. 17-cv-06514-EMC, 2018 WL 348161, at *2 (N.D. Cal. Jan. 10, 2018) (finding that the defendant had shown that its nerve center was the location of its decision-making headquarters and high-level officers).

Torres refers the Court to other evidence that, it contends, undermines the credibility of Segway's assertion that its nerve center is in Texas. For example, Segway's website "highlights" the company's California connections. Pl. Supp. at 2 (quoting Segway's "About Us" page, ECF No. 46-3, which describes regional headquarters in Los Angeles and Dallas). Segway's privacy policy lists a mailing address in California, and that same privacy policy calls for arbitration in Los Angeles, California. Segway Corporate Website Privacy Policy, ECF No. 46-4 at 18–19. Torres points out that in a May 2024 stipulated remand in another lawsuit, Segway described its headquarters and principal place of business as having "recently" transferred to Arcadia, CA. Stipulation to Remand, ECF No. 46-6 ¶ 5. Torres also identifies information from LinkedIn illustrating Segway's ties to California, including that its General Counsel is based in the Los Angels Metropolitan Area. Opp. at 4 (citing ECF Nos. 35-2, 35-3, and 35-5).

The Court finds that none of Torres's evidence undermines the conclusion that, at the time the complaint was filed in May 2025, Segway's nerve center was located in Texas. Torres does not cite any authority in support of his contention that a privacy policy mailing address or chosen forum for arbitration shed light on a corporation's nerve center. Nor do Torres's submissions from LinkedIn persuade the Court that Segway's nerve center is in California, because Segway

*United States District Court*
*Northern District of California*

has provided evidence that, as of the date the complaint was filed, its sole officer, two directors, high-level employees, and headquarters were all located in Texas.  Furthermore, the May 2024 filing that described Segway as having headquarters in California is not in conflict with the timeline put forth by Segway, which describes a late 2024 move to Texas.

To the extent that Torres argues that "no statement about the location of [Segway's] nerve center is credible in light of the other statements it has made about its operations," Pl. Supp. at 5, the Court disagrees.  To the contrary, Segway's evidence demonstrates clearly that, following a period of transition, its principal place of business is in Texas.  Because Texas is "home to a plurality of its officers with strategic, decision-making, and financial authority," Segway has shown by a preponderance of the evidence that its principal place of business is in Texas. *Colmendares v. Paedae, Inc.*, No. 21-cv-5221-DMG, 2021 WL 4934976, at *4 (C.D. Cal. Oct. 22, 2021).  Accordingly, the Court finds that Segway is a citizen of Texas, not California, and the parties are diverse.  The Court concludes that it has subject matter jurisdiction.

### III.     MOTION TO TRANSFER

Having determined that the Court has subject matter jurisdiction, the Court considers whether transfer is appropriate.

#### A.     Legal Standard

The first-to-file rule is "a judicially created doctrine of federal comity, which applies when two cases involving substantially similar issues and parties have been filed in different districts." *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (internal quotation marks and citations omitted). "Under that rule, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Id.* at 1051–52 (internal quotation marks and citation omitted).  "When applying the first-to-file rule, courts should be driven to maximize economy, consistency, and comity." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss.*, Inc., 787 F.3d 1237, 1240 (9th Cir. 2015) (internal quotation marks and citation omitted).  In determining whether to apply the first-to-file rule, a court "analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Id.*  Even if those factors are satisfied, a district court may exercise its discretion to decline to apply the first-to-file rule. *See Alltrade, Inc.*

*v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).  "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping."  *Id.* (internal citations omitted).

### B.    Discussion

#### 1.    The Relevant Factors Favor Application of the First-to-File Rule

A court may apply the first-to-file rule "when a complaint involving the same parties and issues has already been filed in another district."  *Kohn*, 787 F.3d at 1240 (citation omitted).  The applicability of the first-to-file rule is analyzed under three factors: (1) chronology of the lawsuits, (2) similarity of the parties, and (3) similarity of the issues.  *Id.*

Segway argues that the first-to-file rule applies because the *Cicero* action was filed first, the parties in the Delaware Action and the California Action are substantially similar, and the issues and claims are similar in both actions.  Mot. at 4–7.  Torres does not contest that these factors favor the application of the first-to-file rule.

As to the first factor, chronology of the lawsuits, the *Cicero* action was filed before Torres's complaint.  Boyle Decl. ¶¶ 2, 8; *see* Kohn, 787 F.3d at 1240 ("Ordinarily, we start by analyzing which lawsuit was filed first.").  Accordingly, chronology favors application of the first-to-file rule.

The second factor asks whether the parties are substantially similar.  *Kohn*, 787 F.3d at 1240.  Segway argues that the parties are substantially similar because Torres seeks to represent a class of "all persons who purchased the [KickScooters] in the State of California," Compl. ¶ 59, and the Delaware CAC includes both a nationwide class and a California subclass, Del. CAC ¶ 53.  *See* Mot. at 5–6.  In a class action, the "classes, and not the class representatives, are compared."  *See Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (citing *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)).  The proposed classes can be substantially similar where they "seek to represent at least some of the same individuals."  *Id.*  The Court finds that the complaints have overlapping classes and the same defendant, so the parties are substantially similar.

The third factor is the similarity of the issues.  *Kohn*, 787 F.3d at 1240.  Segway argues the

9

issues are substantially similar because the facts and legal theories in Torres's complaint are substantially the same as those raised in the Consolidated Action. Mot. at 6–7. With respect to the third factor, "[t]he issues in both cases also need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240. Courts analyze whether "there is substantial overlap between the two suits." *Id.* at 1241 (citation and internal quotation marks omitted). Even where there are differences between the causes of action, the lawsuits are substantially similar where "the thrust of the lawsuits is identical." *See Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d, 1289, 1297 (N.D. Cal. 2013). As discussed, the lawsuits all revolve around the same defect in the Kickscooters and assert overlapping causes of action arising therefrom, including breach of implied warranty, violations of the Song-Beverly Act, violations of the California CLRA, violations of the California UCL, and violations of the California FAL. Compl. ¶¶ 74–143; Del. CAC ¶¶ 84–194. Thus, the Court concludes that the similarity of the issues weighs in favor of the first-to-file rule.

### 2.    No Discretionary Exceptions to the First-to-File Rule Apply

Even where the three factors favor application of the first-to-file rule, a district court may decline to apply the rule based on equitable considerations. *See Alltrade*, 946 F.2d at 628. Such considerations include anticipatory suits, forum shopping, or bad faith. *Id.* "Other circumstances may also warrant a rejection of the first-to-file rule, such as factors involving convenience to the parties or sound judicial administration." *Power Integrations, Inc.* v. *ON Semiconductor Corp.*, No. 16-CV-06371-BLF, 2017 WL 1065334, at *3 (N.D. Cal. Mar. 21, 2017). Still, the first-to-file rule "should not be disregarded lightly." *Kohn*, 787 F.3d at 1239 (citation omitted). A district court has discretion to "weigh the facts and conclude that the rule should apply." *Alltrade*, 946 F.2d at 628. Ultimately, "[t]he most basic aspect of the first-to-file rule is that it is discretionary." *Id.*

Segway argues that no equitable considerations preclude application of the first-to-file rule because there are no facts to indicate that the *Cicero* action was an anticipatory suit or that Segway has engaged in forum shopping. Mot. at 7–9. Torres contends that equitable considerations favor the case remaining in California, including because Torres anticipates that Segway will move to

United States District Court
Northern District of California

compel arbitration in California, he will be prejudiced by deferring to Interim Class and Liaison Counsel in Delaware, his choice of venue should be honored, and the witnesses are located in California. Opp. at 5–7.

The Court finds that the equitable considerations identified by Torres do not outweigh the first-to-file rule factors. To begin, Torres explains that because there is a pending motion to compel arbitration in *In re Segway Scooter Recall Litigation*, he anticipates that Segway will move to consolidate his case with the Delaware cases and seek to compel arbitration in this case, too. Opp. at 5. Torres argues that this "plan" weighs against transfer because a Delaware court would be unable to compel Torres to arbitrate in California, which is apparently the chosen forum for arbitration. Opp. at 5–6.

Torres refers the Court to *Caremark v. Chickasaw Nation*, No. 21-cv-00574-PHX-SPL, 2021 WL 2780859 (D. Ariz. July 2, 2021) in support of his argument that the pending motion to compel arbitration in Delaware weighs against transfer of this case. Opp. at 6. Applying Tenth Circuit law, the *Caremark* court found that it would be "inequitable to apply the first-to-file rule in this case and defer the issue of arbitration" to the transferee court, where a motion to compel arbitration was already pending. 2021 WL 2780859, at *2. The court explained that the majority rule (including in the Tenth Circuit, the location of the potential transferee court) is that only a district court in the chosen forum for arbitration may compel arbitration. *Id.* Because the *Caremark* court was in the district of the selected arbitration forum, the court declined to defer the arbitrability issue to the transferee court. *Id.* The Court disagrees that *Caremark* requires declining transfer. First, whether Segway will move to compel arbitration in this case is not an issue before the Court. Second, if Segway moves to compel arbitration and the Delaware court is unable to compel arbitration—an issue on which the Court expresses no opinion—then the case will be litigated in the Delaware court.

Torres's other arguments, which pertain to possible deference to Interim Class and Liaison counsel, Torres's interest in litigating at home, the location of the witnesses, and the Court's expertise do not counterbalance the purpose of the first-to-file rule in promoting judicial efficiency and avoiding the possibility of conflicting judgments. In sum, the Court finds that the factors

11

favor application of the first-to-file rule, and no exception applies.

### 3.    Transfer is Appropriate

Having determined that application of the first-to-file rule is warranted, the court "has discretion to transfer, stay, or dismiss the second case." *Bozic*, 888 F.3d at 1052. Courts generally prefer transfer under the first-to-file rule where, as here, the claims asserted in the consolidated action in Delaware and the California Action are substantially similar, but not identical. As a consequence, transfer is appropriate because it "avoids placing an unnecessary burden on the federal judiciary" and "avoid[s] the embarrassment of conflicting judgments." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 708 (N.D. Cal. 2021) (quoting *Church of Scientology of Cal. v. U.S. Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)).

## IV.    ORDER

For the foregoing reasons, the Court GRANTS Segway's motion to transfer the action to the District of Delaware. Having determined that transfer is appropriate, the Court DENIES Segway's motion to stay the case AS MOOT. All dates are hereby VACATED. The Clerk of the Court SHALL transfer this action to the United States District Court for the District of Delaware and close the case.

Dated:  February 5, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12